[Cite as *State v. McCargo*, 2026-Ohio-3115.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                    :

    Plaintiff-Appellee,       :

    v.                        :

                                              No. 115704

MARCUS MCCARGO,                   :

    Defendant-Appellant.      :

_____

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 13, 2026

_____

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-24-691958-C and CR-25-700566-A

_____

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Eric Collins, Assistant Prosecuting Attorney, *for appellee.*

Joseph V. Pagano, *for appellant.*

TIMOTHY W. CLARY, J.:

{¶ 1} Defendant-appellant Marcus McCargo ("McCargo") appeals from his guilty plea. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} On May 14, 2024, in Cuyahoga C.P. No. CR-24-691958-C ("Case No. 691958"), a Cuyahoga County Grand Jury indicted McCargo on nine counts related to an incident involving McCargo and three codefendants that allegedly resulted in the death of Samell Watt on June 1, 2022. The charges included aggravated murder, murder, aggravated robbery, discharge of a firearm on or near prohibited premises, felonious assault, and improperly handling a firearm in a motor vehicle. All charges, except improperly handling a firearm in a motor vehicle, carried one- and three-year firearm specifications. McCargo pleaded not guilty to all charges.

{¶ 3} On January 16, 2025, police observed McCargo enter a liquor store with what they presumed was a firearm in his possession. ("January 2025 incident"). Upon the officers' approach, McCargo allegedly fled and entered a vehicle. The police arrested McCargo on an outstanding warrant related to Case No. 691958 and discovered a firearm with a Glock switch under the vehicle's driver's seat. Two months later, in Cuyahoga C.P. No. CR-25-700566-A ("Case No. 700566"), a Cuyahoga County Grand Jury indicted McCargo on the following charges stemming from the January 2025 incident: having weapons while under disability, carrying a concealed weapon, improperly handling a firearm in a motor vehicle, failure to comply with an order or signal of a police officer, and unlawful possession of dangerous ordnance. All counts included a forfeiture-of-a-weapon specification, and the charge of unlawful possession of a dangerous ordnance

included one- and six-year firearm specifications. McCargo pleaded not guilty to all charges.

{¶ 4} On August 4, 2025, McCargo filed a motion to suppress all evidence — specifically, the firearm with a Glock switch — obtained from the allegedly illegal search and seizure of his vehicle during the January 2025 incident.

{¶ 5} At a pretrial hearing on August 20, 2025, the assistant prosecuting attorney detailed the State's plea offer that included an agreed recommended sentence of 12 to 18 years with no judicial release in exchange for a guilty plea in Case No. 691958 to involuntary manslaughter with a three-year firearm specification and aggravated robbery. The plea offer also required a guilty plea to Case No. 700566 for possession of a dangerous ordnance in violation of R.C. 2923.17(A), with a six-year firearm specification and forfeiture specification. All remaining counts and specifications would be nolled.

{¶ 6} The trial judge indicated that there would be no promises as to a particular sentence but he would sentence McCargo within the agreed 12 to 18 years. The trial court also stated that once the suppression hearing had begun, which was scheduled for five days later, the State would rescind the plea offer. Further, the court informed McCargo that he had "an absolute right to go to trial." Tr. 32. The trial court also outlined minimum and maximum sentences associated with the charges, provided the statutory Reagan Tokes advisements, and cleared the courtroom to allow McCargo to confer with his mother, sister, and defense counsel about the plea offer.

{¶ 7} Upon reconvening with the trial judge, McCargo requested one additional day to consider the plea offer. The trial judge indicated that he did not want McCargo to "rush into something that [he wasn't] ready to do" but the court wanted to have some finality. Tr. 33. The court further stated, "I'm more than willing to give you a little more time. I would really prefer, however, that we get this done this week, either today or tomorrow. But I can't force you into anything." Tr. 35.

{¶ 8} The trial judge cleared the courtroom for a second time and allowed McCargo to meet with his family and counsel. After the second meeting, defense counsel announced McCargo's desire to enter a guilty plea as specified in the plea offer. The trial court conducted a Crim.R. 11 plea colloquy, and McCargo stated that he was not under the influence of any medication, drugs, or alcohol that impacted his understanding of the proceedings. McCargo denied anyone threatened or promised him a certain outcome upon his entering a plea. McCargo confirmed that he was satisfied with the representation he received from defense counsel, and McCargo stated that he understood a plea of guilty was a complete admission of his guilt. The trial court provided McCargo with the statutory Reagan Tokes advisements, outlined minimum and maximum sentences associated with the charges, and advised McCargo on postrelease control and fines. The trial court personally addressed McCargo and advised him of the constitutional and nonconstitutional rights he would waive pursuant to entering a guilty plea. McCargo pleaded guilty to the charges outlined in the plea offer. The trial court stated that

McCargo was making a knowing, intelligent, and voluntary decision to withdraw his prior plea and plead guilty, and counsel for the State and defense agreed.

{¶ 9} One day later, on August 21, 2025, McCargo drafted a handwritten letter to the court seeking discharge of his current counsel and withdrawal of his guilty plea.

{¶ 10} During the sentencing hearing, the court initially noted that it had received McCargo's handwritten motion to discharge his current counsel and withdraw his guilty plea. The trial court considered the letter a motion to withdraw McCargo's presentence guilty plea, and the court conducted a full hearing on the motion.

{¶ 11} The court read the motion into the record. The letter asserted that McCargo had been lied to and manipulated into accepting the plea offer and he would like the opportunity to prove his innocence. Specifically, the letter stated that McCargo had needed more time to consider the plea offer because he did not understand the terms of the offer or the rights he would give up upon his acceptance of the offer. The letter stated that the plea offer was first presented at the plea hearing; he was forced to take the plea offer; he was promised the shortest possible sentence; he was told to look to defense counsel for guidance as to how to respond to the court's questions during the Crim.R. 11 colloquy; he was not provided all relevant evidence; he was manipulated into believing that unless he accepted the plea offer the judge, jury, and assistant prosecuting attorney would violate his rights and he would receive the longest sentence possible; and he was told he had no

chance of winning the suppression hearing because the judge was a former prosecutor. The letter also argued that McCargo unsuccessfully asked defense counsel to subpoena the owners of the automobile in which he had been arrested in Case No. 700566, to demonstrate that he did not trespass or possess a firearm as charged in that case. McCargo's letter stated that his mind was cloudy at the plea hearing and this impacted his understanding of the proceedings.

{¶ 12} Defense counsel disagreed with the comments presented in McCargo's letter. Specifically, defense counsel stated that as an experienced trial attorney, he and McCargo had reviewed all the pros and cons of the evidence in both cases and the potential outcomes should the cases be tried. Defense counsel conceded there was a delay in providing the body-camera footage because of a "glitch in the [discovery] portal" but defense counsel provided McCargo and his family with all discovery including copies of relevant videos. Tr. 93. Defense counsel stated that he had informed McCargo that it was unlikely he would prevail on his motion to suppress because of the inevitable discovery rule. Defense counsel believed that upon McCargo's arrest under the outstanding warrant, the vehicle McCargo had occupied at the time of his arrest would have been impounded, towed, and subject to an inventory search following McCargo's arrest and during the search, the firearm with the Glock switch would have been inevitably discovered.

{¶ 13} As to Case No. 691958, defense counsel further stated that he had informed McCargo that "there were some real iffy issues" and the State's key witness was "impeccable." Tr. 70, 71. Defense counsel further stated that he had informed

McCargo that he had known the trial judge for a number of years and he expected the judge to follow the law. Defense counsel stated that he had reviewed all relevant case information with McCargo and his mother and he had instructed McCargo and his mother to balance the risks of trial with the benefits of the plea offer.

{¶ 14} The assistant prosecuting attorney opined that McCargo had had a change of heart regarding his guilty plea rather than experiencing any coercion. McCargo declined to make any additional statements in support of his presentence motion to withdraw his guilty plea.

{¶ 15} The court determined McCargo had experienced a change of heart and denied his motion to discharge counsel and withdraw his guilty plea. The court proceeded with sentencing and imposed an aggregate sentence, on both cases, of 13 to 14 and one-half years.

{¶ 16} On October 21, 2025, McCargo filed a notice of appeal, and he now presents three assignments of error, verbatim:

> Assignment of Error I: The trial court abused its discretion in denying Appellant's Presentence Motion to Withdraw his guilty plea.
>
> Assignment of Error II: Appellant was deprived of his right to due process and effective assistance of counsel under the Sixth Amendment to the United States Constitution and Art. I, § 10 of the Ohio Constitution.
>
> Assignment of Error III: The trial court erred by accepting Appellant's guilty plea because it was not knowingly, intelligently, or voluntarily made.

**Legal Analysis**

**Presentence Motion to Withdraw Guilty Plea**

{¶ 17} In his first assignment of error, McCargo argues that the trial court abused its discretion when it denied his presentence motion to withdraw his guilty plea. Specifically, McCargo argues that he was coerced into accepting the plea, he did not understand the effect of a guilty plea, and he had insufficient time to consider the plea agreement. McCargo also argues that while the trial court's explanation of the potential maximum sentence was accurate, it "created significant pressure on [him] to accept the plea offer" because he was only 21 years old, had no significant experience with the criminal justice system, and faced a 33-year and three-month sentence before being eligible for parole. Appellant's brief, p. 15. McCargo contends that the trial court needed to assess the totality of the circumstances and ponder how McCargo interpreted defense counsel's comments as to his chances of success at trial and why he should consider the plea offer rather than merely consider the plea hearing transcript. McCargo suggests that he could have misconstrued defense counsel's explanations to mean he had no alternative but to enter a guilty plea.

{¶ 18} Initially we note that McCargo was represented by counsel during the entirety of the proceedings, yet he filed his motion to withdraw his guilty plea pro se. While a criminal defendant has the right to counsel or the right to act pro se, he or she does not have the right to both, which is referred to as "hybrid representation." *State v. Powell*, 2019-Ohio-346, ¶ 16 (8th Dist.), citing *State v. Mongo*, 2015-Ohio-1139, ¶ 13 (8th Dist.), citing *State v. Martin*, 2004-Ohio-5471,

paragraph one of the syllabus; *State v. Thompson*, 33 Ohio St.3d 1, 6-7 (1987). When a criminal defendant is represented by counsel, the trial court is not obligated to entertain a pro se motion filed by the defendant. *State v. Washington*, 2012-Ohio-1531, ¶ 11 (8th Dist.). In fact, the trial court may strike a pro se motion that is not joined by defense counsel or there is no need for the relief sought by the pro se defendant. *State v. Davis*, 2006-Ohio-5039, ¶ 12 (10th Dist.). Nothing in the record indicates defense counsel joined McCargo in his motion or believed a basis existed for the motion. Even though the court could have struck the motion, it conducted a full hearing.

{¶ 19} "We review a trial court's ruling on a motion to withdraw a guilty plea for abuse of discretion." *State v. Hines*, 2020-Ohio-663, ¶ 7 (8th Dist.), citing *State v. Xie*, 62 Ohio St.3d 521, 526 (1992). The term abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 20} A motion to withdraw a guilty plea is governed by Crim.R. 32.1, which reads:

> A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

While a presentence motion to withdraw a guilty plea "should be freely and liberally granted," a defendant does not have an absolute right to withdraw a plea prior to sentencing. *Xie* at 527. "[I]t is within the sound discretion of the trial court to determine what circumstances justify granting such a motion." *State v. Westley*, 2012-Ohio-3571, ¶ 6 (8th Dist.), citing *Xie* at 527. Prior to ruling on a presentence motion to withdraw a plea, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the motion. *Xie* at paragraph one of the syllabus.

{¶ 21} This court has held that a trial court's denial of a motion to withdraw a guilty plea was not an abuse of discretion where the record demonstrates

"(1) the accused is represented by competent counsel;

(2) the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea;

(3) after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion; and

(4) the court gives full and fair consideration to the plea withdrawal request."

*State v. Griffin*, 2023-Ohio-2776, ¶ 15 (8th Dist.), quoting *State v. Read-Bates*, 2020-Ohio-3456, ¶ 16 (8th Dist.), citing *State v. Peterseim*, 68 Ohio App.2d 211, 214 (8th Dist. 1980).

{¶ 22} Trial courts have also considered this nonexhaustive list of additional factors in its determination of a presentence motion to withdraw a guilty plea:

"(5) whether the motion was made timely; (6) whether the motion states specific reasons for withdrawal; (7) whether the defendant

understood the nature of the charges and the possible penalties; (8) whether the defendant was perhaps not guilty or had a complete defense; and (9) whether the state would suffer prejudice if the defendant is allowed to withdraw the plea."

(Citations omitted.) *State v. Balducci*, 2020-Ohio-5334, ¶ 30 (8th Dist.), quoting *Hines*, 2020-Ohio-663 at ¶ 10 (8th Dist.). "Consideration of these factors is a balancing test, and no one factor is conclusive." *State v. Wilder*, 2025-Ohio-3075, ¶ 21 (8th Dist.), citing *State v. Fish*, 104 Ohio App. 3d 236, 240 (1st Dist. 1995), *overruled by State v. Sims*, 2017-Ohio-8379, ¶ 15 (1 st Dist.).

{¶ 23} At the start of the sentencing hearing, the court noted McCargo's handwritten motion to discharge his current counsel and withdraw his guilty plea and held a full hearing on the motion. The trial court, counsel for the State, and defense counsel had previously been provided with copies of the plea hearing transcript.

{¶ 24} The trial court read McCargo's letter into the record and assessed the nine relevant factors considered in a presentence motion to withdraw a guilty plea; the court found the record did not support a granting of the motion.

{¶ 25} We will assess the nine factors considered by the trial court. A review of the record demonstrates that McCargo was represented by counsel with 36 years of legal experience, and McCargo has not presented any counterarguments. During the plea hearing, the trial court afforded McCargo a full Crim.R. 11 hearing during which McCargo acknowledged that he understood the nature of the charges and the possible penalties. Additionally, the court identified each right McCargo would

waive with his guilty plea, and McCargo indicated on the record that he understood the impact of such waivers. The record reflects that the trial court conducted a complete and impartial hearing on McCargo's motion and gave full and fair consideration to the plea withdrawal request.

{¶ 26} The record also shows that McCargo's motion — filed one day after the plea hearing — was timely; timely filing was the only factor that weighed in favor of granting McCargo's motion.

{¶ 27} The motion stated McCargo was coerced into accepting the plea deal, but his arguments are not supported by the record.

{¶ 28} The record shows that McCargo was granted two opportunities to sit and discuss the plea offer with counsel and his family. While the court indicated it wanted to resolve the case within one to two days, no exchange indicated coercion by the court or counsel. The record does not demonstrate any comments by defense counsel insinuating McCargo's race would adversely impact his success at trial. As to the suppression hearing, defense counsel stated that he discussed with McCargo the pros and cons of the search and seizure during the January 2025 incident. Defense counsel also reportedly informed McCargo that the trial judge would apply the applicable case law and likely deny the motion under the inevitable discovery doctrine. We decline to accept McCargo's argument that he was coerced because he was only 21 years old and lacked a significant criminal history or experience with the criminal justice system.

{¶ 29} Nothing in the record indicated McCargo was not guilty or had a complete defense to the charges. It appeared likely that McCargo's motion to suppress, filed in Case No. 700566, would be denied pursuant to the inevitable discovery rule. *State v. Burke*, 2010-Ohio-3597, ¶ 23 (8th Dist.) ("The inevitable discovery doctrine has been applied where evidence inevitably would have been discovered during an inventory search."). McCargo's statements during jailhouse calls also confirmed that at the time of the alleged offense he had a firearm with a Glock switch and he knew the associated penalty. Further, McCargo did not introduce any testimony or evidence in support of his innocence in either indicted case.

{¶ 30} Despite McCargo's allegations, the court did not promise to impose the minimum sentence but clearly stated, "I make no promises of a sentence." Tr. 21. At the hearing on his motion to withdraw, McCargo conceded that the trial court informed him he could proceed with trial rather than plead guilty:

> COURT: I told you that, you know, I would prefer you to take the plea that day, but I told you you had your absolute right to trial and you were first up on that Monday; did I not?
>
> MCCARGO: Yes.

Tr. 85. The court stated that if McCargo accepted the plea offer it would sentence him within the agreed recommended range of 12 to 18 years. McCargo stated at the plea hearing that he understood the nature of the charges and the possible penalties. McCargo never indicated during the plea hearing that his mind was cloudy.

{¶ 31} We also note that to substantiate a claim of coercion, "a defendant 'must submit supporting material containing evidence that the guilty plea was induced by false promises.'" *State v. Bradley*, 2020-Ohio-30, ¶ 6 (8th Dist.), quoting *State v. Thomas*, 2005-Ohio-4145, ¶ 5 (8th Dist.), citing *State v. Kapper*, 5 Ohio St.3d 36 (1983). McCargo offered no evidence or testimony in support of his claims of coercion. Where the record shows McCargo stated during the plea colloquy that he was satisfied with the representation he received from his counsel, no one threatened or forced him to enter a plea of guilty, and no one made any promises to force him to change his plea, his claims of coercion are unsupported. *Bradley* at ¶ 7 (Defendant's claim of coercion was unsubstantiated where defendant failed to offer evidence of alleged coercion at the plea hearing, conversely stated at the plea colloquy his satisfaction with his counsel's performance and that he had not been promised anything in return for his guilty plea, and defense counsel disclaimed the defendant's allegations of coercion.). Thus, McCargo's stated reason for his motion — coercion — lacked merit.

{¶ 32} During the hearing, the court found that the State would have been prejudiced by the withdrawal of McCargo's guilty plea because the assignment of two new defense attorneys would result in a delay as the new attorneys prepared for trial and witnesses may not be available at a later trial date. The court added that the State's prejudice would not be a controlling factor in its decision on McCargo's motion. McCargo did not dispute the court's reasoning, nor do we have any reason

to do so.  Accordingly, all but one factor supports the trial court's denial of McCargo's motion to withdraw.

{¶ 33} McCargo's motion to withdraw his guilty plea had no substantive basis and indicated he had had a change of heart.  This court has found that a change of heart regarding a guilty plea does not justify withdrawal of a guilty plea.  *State v. Hatchell*, 2023-Ohio-3713, ¶ 32 (8th Dist.), citing *State v. Peak*, 2019-Ohio-2569, ¶ 14 (8th Dist.), citing *State v. Norman*, 2018-Ohio-2929, ¶ 20 (8th Dist.).

{¶ 34} We find that the trial court did not abuse its discretion when it denied McCargo's presentence motion to withdraw his guilty plea and, accordingly, we overrule his first assignment of error.

**Ineffective Assistance of Counsel**

{¶ 35} In his second assignment of error, McCargo contends that he was denied effective assistance of counsel.  Specifically, he contends that his counsel was ineffective when (1) defense counsel coerced him into accepting the plea offer by instructing McCargo that he could not receive a fair hearing because of his race and the judge's background as a prosecutor, (2) defense counsel informed him that he could not prevail at the suppression hearing because the judge was a former prosecutor and would rule against him because of his race, (3) defense counsel delayed the disclosure of body-camera footage to him, and (4) defense counsel failed to subpoena witnesses to testify that he did not trespass or possess a firearm during the January 2025 incident.  McCargo contends that all these circumstances,

collectively, resulted in ineffective assistance of counsel that rendered his guilty plea invalid.

{¶ 36} When a defendant enters a guilty plea, he generally waives all appealable errors that may have occurred unless such errors are shown to have precluded the defendant from entering a knowing and voluntary plea. *State v. Robinson*, 2020-Ohio-98, ¶ 6 (8th Dist.); *State v. Kelley*, 57 Ohio St.3d 127 (1991), paragraph two of the syllabus. Thus, a claim of ineffective assistance of counsel is waived by a guilty plea, except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing, intelligent, and voluntary. *State v. Williams*, 2014-Ohio-3415, ¶ 11 (8th Dist.), citing *State v. Spates*, 1992-Ohio-130, citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

{¶ 37} To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance fell below an objective standard of reasonable representation, and (2) the defendant was prejudiced by that deficient performance. *State v. Trimble*, 2009-Ohio-2961, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Prejudice is established when the defendant demonstrates "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Strickland* at 694. The failure to prove either prong of this two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 2000-Ohio-448, ¶ 49, citing *Strickland* at 697.

{¶ 38} A defendant cannot meet his burden by making bare allegations without any support in the record. *State v. Tyner*, 2012-Ohio-2770, ¶ 11 (8th Dist.), citing *State v. Leek*, 1999 Ohio App. LEXIS 3503 (8th Dist. July 29, 1999), citing *State v. Stewart*, 1998 Ohio App. LEXIS 5462 (8th Dist. Nov. 19, 1998). "[A] reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Pawlak*, 2014-Ohio-2175, ¶ 69 (8th Dist.), citing *State v. Bradley*, 42 Ohio St.3d 136, 141 (1989). Our review is not one of the "totality of the circumstances." *State v. Day*, 2008-Ohio-4122, ¶ 45 (8th Dist.).

{¶ 39} McCargo's first and second claims of ineffective assistance counsel stem from alleged coercion. Allegations of a coerced plea involve actions over which the State has no control. *State v. Barnett*, 2007-Ohio-4954, ¶ 59 (11th Dist.), quoting *Kapper*, 5 Ohio St.3d 36, 38 (1983). Accordingly, "[a] claim that a guilty or no contest plea was induced by ineffective assistance of counsel must be supported by evidence where the record of the guilty plea shows it was voluntarily made." *Barnett* at ¶ 56, citing *State v. Malesky*, 1992 Ohio App. LEXIS 4378 (8th Dist. Aug. 27, 1992), and *Kapper*. "A defendant's own self-serving declarations or affidavits are insufficient to rebut a record that demonstrates that the plea was voluntary." *State v. Lett*, 2010-Ohio-4188, ¶ 33 (7th Dist.), citing *Barnett* at ¶ 56; *see also State v. Leek*, 1999 Ohio App. LEXIS 3503 (8th Dist. July 29, 1999) (Leek alleged that the State reneged on a promised five-year prison sentence. Leek's failure to point anywhere in the record to substantiate his ineffective-assistance-of-

counsel claim that his counsel failed to object at sentencing or mention the promised prison sentence was fatal to his appeal.). Here, McCargo did not submit evidence to rebut the record or show prejudice and, thus, he cannot demonstrate that but for defense counsel's actions he would not have entered his guilty plea.

{¶ 40} Similarly, in McCargo's fourth claim of ineffective assistance of counsel, he argues that the delayed disclosure of body-camera footage to him by his counsel compromised the integrity of the judicial system and undermined McCargo's confidence in the system. McCargo presents no evidence that he was prejudiced by the late disclosure of the body-camera footage and, therefore, he cannot show that but for defense counsel's actions he would not have entered his guilty plea.

{¶ 41} McCargo's final claim under ineffective assistance of counsel argues that his attorneys failed to subpoena witnesses. Counsel's decision as to which witnesses will be called at trial is considered trial strategy. *State v. Fisher*, 2020-Ohio-670, ¶ 20 (8th Dist.), quoting *State v. Pickens*, 2014-Ohio-5445, ¶ 203, *overruled by State v. Bates,* 2020-Ohio-634, quoting *State v. Treesh*, 2001-Ohio-4. "''"Debatable trial tactics do not establish ineffective assistance of counsel."''" *State v. Sims*, 2021-Ohio-4009, ¶ 22 (8th Dist.), quoting *State v. Snyder*, 2009-Ohio-2473, ¶ 32 (5th Dist.), quoting *State v. Hoffner*, 2004-Ohio-3430, ¶ 45. Further, McCargo presents no evidence demonstrating he was prejudiced by defense counsel's decision not to subpoena witnesses and, accordingly, he cannot show that but for defense counsel's actions he would not have entered his guilty plea.

{¶ 42} For the foregoing reasons, McCargo's second assignment of error is overruled.

**Knowingly, Intelligently, and Voluntarily Entered a Guilty Plea**

{¶ 43} In his third assignment of error, McCargo argues that his guilty plea was involuntarily entered because of the coercive atmosphere in which he felt compelled to make a quick decision on the plea offer without first fully considering the consequences of his plea.

{¶ 44} Our inquiry is whether the trial court's advisements during McCargo's plea hearing conformed with Crim.R. 11. "The underlying purpose of Crim.R. 11(C) is to convey certain information to a defendant so that he [or she] can make a voluntary and intelligent decision regarding whether to plead guilty." *State v. Ballard*, 66 Ohio St. 2d 473, 479-480 (1981). Under Crim.R. 11(C), a trial court shall not accept a guilty plea in a felony case without first addressing the defendant and doing the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require

the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 45} "The standard for reviewing whether the trial court accepted a plea in compliance with Crim.R. 11(C) is a de novo standard of review." *State v. Cardwell*, 2009-Ohio-6827, ¶ 26 (8th Dist.), citing *State v. Stewart*, 51 Ohio St.2d 86 (1977). A reviewing court's focus is not on whether the trial judge has "'[incanted] the precise verbiage' of the rule . . . but on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea[.]" *State v. Dangler*, 2020-Ohio-2765, ¶ 12, quoting *Stewart* at 92, citing *State v. Veney*, 2008-Ohio-5200, ¶ 15-16; *State v. Clark*, 2008-Ohio-3748, ¶ 26; *State v. Miller*, 2020-Ohio-1420, ¶ 19.

{¶ 46} "When a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial court proceedings and that he was prejudiced by that error." *Dangler* at ¶ 13.[1] "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). A defendant must establish prejudice ""on the face of the record"" and not solely by virtue of challenging a plea on appeal. *Id.* at ¶ 24, quoting *Hayward v. Summa Health Sys.*, 2014-Ohio-1913, ¶ 26, quoting *Wagner v. Roche Laboratories*, 85 Ohio St.3d 457 (1999). "[A] defendant is not entitled to have his plea vacated unless he

---

[1] While two exceptions to the traditional rule apply where no showing of prejudice is required, neither exception applies in the instant case. *Dangler* at ¶ 14-15, citing *Clark* at ¶ 31; *State v. Sarkozy*, 2008-Ohio-509, ¶ 22.

demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16, citing *Nero* at 108.

{¶ 47} Thus, in evaluating whether a trial court has complied with Crim.R. 11(C), we must ask

> (1) has the trial court complied with the relevant provision of the rule?

> (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? And

> (3) if a showing of prejudice is required, has the defendant met that burden?

*Id.* at ¶ 17.

{¶ 48} McCargo asserts that even though the trial court informed him he was not obligated to accept the plea offer, he felt compelled to do so and, therefore, did not enter his plea voluntarily. McCargo further asserts that he was only 21 years old at the time of the hearing, he had no experience with the criminal justice system, and he was rushed to decide between accepting the plea offer or proceeding to trial where he faced a potential sentence of 33 years and three months before being eligible for parole. McCargo also claims he felt pressured to render a decision on the day of the hearing.

{¶ 49} McCargo's arguments are not well taken. The record demonstrates that the trial court fully complied with the relevant portions of Crim.R. 11(C). The court addressed McCargo personally and thoroughly explained the nature of each offense, the maximum penalties associated with each offense, the constitutional and

nonconstitutional rights McCargo would be waiving by entering a guilty plea, and the consequences of a guilty plea. McCargo acknowledged his understanding of these advisements. The court confirmed no threats or promises were made to McCargo in exchange for his guilty plea and McCargo was satisfied with defense counsel's representation. The prosecutor and defense counsel agreed that the trial court complied with the requirements of Crim.R. 11.

{¶ 50} Additionally, the record shows that on the date of the plea hearing, the trial court twice closed the courtroom and permitted McCargo to confer privately with his family members and counsel regarding the plea offer. While McCargo asked the court for an additional day before entering his plea and the court indicated it would prefer a quicker response, the court also informed McCargo that he was not obligated to accept the plea offer. Further,

> [t]here is no set amount of time a defendant must spend contemplating a plea offer to enter a valid guilty plea. "[F]acing time pressure" to respond to a plea offer "'is common among criminal defendants, and hardly exceptional enough to evince an overbearing of [a defendant's] will.'" *United States v. Bruzón-Velázquez*, 49 F.4th 23, 30 (1st Cir. 2022), quoting *United States v. Marrero-Rivera*, 124 F.3d 342, 350 (1st Cir. 1997).

*State v. Sillman*, 2024-Ohio-3363, ¶ 31 (4th Dist.).

{¶ 51} Under these circumstances, we conclude that McCargo's guilty pleas were knowingly, intelligently, and voluntarily entered and overrule his third assignment of error.

{¶ 52} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIMOTHY W. CLARY, JUDGE

MICHELLE J. SHEEHAN, A.J., CONCURS;
MARY J. BOYLE, J., CONCURS (WITH SEPARATE OPINION)


MARY J. BOYLE, J., CONCURRING:

{¶ 53} Respectfully, I concur with the majority. I would overrule all assigned errors and affirm McCargo's convictions. I write separately to express my opinion regarding hybrid representation as discussed in the majority opinion. While I agree that a defendant does not have the right to hybrid representation, I take exception with the legal principle that the trial court is not obligated to entertain pro se motions filed by the defendant. It is my opinion that there are situations that exist where a trial court should entertain a pro se motion, even if the defendant is represented by counsel, because of the relief sought by the defendant. *See State v. Deal*, 17 Ohio St.2d 17 (1969) (where during trial, the appellant complained about the adequacy of counsel. The trial court found that the complaint was unreasonable

and proceeded with the trial. The Ohio Supreme Court held that based on circumstances of that case, "it was the duty of the trial court to see that the record contained an adequate investigation of appellant's complaint." *Id.* at 17.)

{¶ 54} Thoughtfully, the trial court in this matter did not ignore McCargo's letter requesting that his current counsel be discharged and that his plea be vacated. Instead, the trial court, in my opinion, properly treated McCargo's letter as a motion and held a full hearing. I commend the trial court for taking the time to hear McCargo's complaints. It is my opinion that all trial courts should exercise this discretion and not turn a blind eye on a letter or motion filed by a defendant who is represented by counsel. Many circumstances exist in which a pro se motion may have merit and would be granted.

{¶ 55} I also write separately as I did in *State v. Jordan*, 2026-Ohio-1562 (8th Dist.), and *State v. Cox*, 2026-Ohio-560 (8th Dist.), to emphasize that I agree with Justice Brunner's concurring opinion in *State v. Barnes*, 2022-Ohio-4486, and believe that "[t]he nine-factor analysis should not overshadow the exercise of judicial discretion needed to analyze a presentence plea withdrawal in accordance with the basic principles established by *Xie* and Crim.R. 32.1." *Id.* at ¶ 40 (Brunner, J., concurring).

{¶ 56} As Justice Brunner stated, the "nine-factor . . . 'test' has overshadowed the basic principles established by *Xie* and Crim.R. 32.1." *Id.* at ¶ 38 (Brunner, J., concurring). In *Xie*, the Ohio Supreme Court found that presentence motions to withdraw a guilty plea "should be freely and liberally granted." *Id.* at 527.

"Freely and liberally granting the defendant's presentence motion to withdraw his guilty plea requires the trial court to exercise discretion in its judgment. And that judgment should not be slighted by making a trial court essentially answer yes-or-no questions to come up with a weighted score for a matter that requires the court to engage in human observation, reflection on accumulated experience, and discretion that only a trial court is in the position to exercise to reach a final judgment on the matter." *Barnes* at ¶ 41 (Brunner, J., concurring).

{¶ 57} Applying the basic principles established by *Xie* and Crim.R. 32.1 to this case, without weighing the nine factors, leads to the conclusion that McCargo's presentence motion to withdraw his guilty plea was properly denied.

{¶ 58} Therefore, I concur with the majority opinion and offer the above additional suggestions for consideration.